**In the Matter of O.P.M. LEASING SERVICES, INC., Debtor.**

**Bankruptcy No. 81 B 10533.**

United States Bankruptcy Court, S.D. New York.

Jan. 20, 1987.

See also, Bkrtcy., 61 B.R. 596.

Zalkin, Rodin & Goodman, New York City, for trustee; Andrew Gottfried, Steven G. Yudin, Menachem O. Zelmanovitz, of counsel.

Tenny Duga, Indianapolis, Ind., for State of Indiana.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

### I. *Background*

The trustee ("Trustee") for O.P.M. Leasing Services, Inc., *et al.* ("OPM" or "Debtor") moved for summary judgment pursuant to Fed.R.Civ.P. 56 and Fed.R.Bankr.P. 7056 and 9014, disallowing and expunging two corporate income tax claims (M42150 and M42120) filed by the State of Indiana ("Indiana"), on the ground that the claims were filed after the bar date for filing pre-petition claims had expired. In addition the Trustee sought a determination that Indiana's setoff of a 1984 tax refund owing to the Debtor, against the second claim at issue, constituted an impermissible setoff under § 553 of the Bankruptcy Code ("Code").

Indiana responded with a cross-motion for summary judgment, *inter alia* seeking to have its claims allowed or in the alternative requesting leave to file late claims, and requesting a declaration that its second claim is properly classified as a timely filed, post-petition administrative expense claim, not a late filed pre-petition claim. Based on this latter assertion, Indiana also sought a determination that the post-petition tax refund was properly setoff against this alleged post-petition claim.

As to the first disputed claim (M42150), at a hearing on September 11, 1986, this court concluded that the claim should be expunged after Indiana's counsel conceded that the claim was filed after the bar date and that the late filing was not accompanied by excusable neglect. (Transcript of proceedings of September 11, 1986 at 14–15).[1] For the reasons enumerated below

---

1. Fed.R.Bankr.P. 9006 in relevant part states:
   When an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where, the

failure to act was the result of *excusable neglect* [emphasis added].

In response to the court's inquiry into why Indiana did not timely file its proof of claim, counsel for Indiana responded: "I don't believe there is probably a good excuse here in this matter." (Transcript of proceedings of September 11, 1986 at 15).

this court finds that Indiana's second tax claim (M42120) which covers the pre-petition period of a tax year which terminated post-petition, should be expunged as a late filed, pre-petition claim. In addition Indiana's setoff of the tax refund due the Debtor's estate is found to be impermissible under § 553 of the Code.

## II. *The Claims in Dispute*

### A. *Claim M42150—Tax Years 1979 and 1980*

On March 11, 1981 OPM filed a voluntary chapter 11 petition for reorganization (a "petition") pursuant to § 301 of the Code. The Trustee for OPM was then appointed soon thereafter, pursuant to an order of this court under § 151104 of the Code. In accord with Fed.R.Bankr.P. 3003(c)(3), March 30, 1982 was subsequently established as the deadline by which all proofs of claims, for pre-petition claims, had to be filed (the "bar date").

On November 21, 1984 OPM's Trustee submitted a "draft" (sic) corporate income tax return to Indiana for OPM's 1979 fiscal year. (Indiana's Memorandum of Law at 2, 4). Indiana then filed a pre-petition priority claim against OPM on April 8, 1985 representing taxes due for fiscal years 1979 and 1980. On August 20, 1985 the Trustee moved to expunge this claim due to it having been filed after the expiration of the bar date.

Indiana conceded timely receipt of notice of both: (1) debtor's filing of its bankruptcy petition and (2) the bar date. (Indiana's Memorandum of Law at 4). In addition, it appears that prior to OPM's filing of its petition, Indiana was alerted to OPM's potential 1979 tax liability, as Indiana granted OPM an extension of time to file its 1979 corporate income tax return. (Letter dated August 22, 1979 from State of Indiana Department of Revenue; Indiana's Memorandum of Law at 4). Indiana, thus, should have been alerted to file a protective claim or to timely apply for an extension of time to file its claim. Nevertheless, Indiana failed to file its proof of claim until more than three years after the bar date had expired.

At the hearing held on September 11, 1986 this court concluded that the claim should be expunged, after Indiana's counsel conceded that it was filed late and that there was no excusable neglect. *See supra* note 1.

### B. *Claim M42120—Tax Year 1981*

OPM's tax year runs from December 1 through November 30. Since OPM filed its bankruptcy petition on March 11, 1981, OPM's fiscal year ending in 1981 potentially encompassed both a post and a pre-petition period.

In April 1985 the Trustee filed OPM's Indiana state corporate income tax return for its fiscal year ending in 1981 and paid the full tax, interest and penalty due for the post-petition portion of that year, (i.e. March 11, 1981 through November 30, 1981). The Trustee did not pay any tax or interest due for the pre-petition period of that year, (i.e. December 1, 1980 through March 10, 1981).

On September 23, 1985 Indiana filed a purported administrative claim which *inter alia* included the unpaid balance of OPM's 1981 tax liability. The claim was subsequently amended and superseded twice and the final proof of claim, which is the subject of this dispute, was filed on December 2, 1985. This claim for $14,471.11 is for the taxes as well as the interest owing on the unpaid, pre-petition portion of OPM's 1981 corporate income tax liability.

The Trustee contends that Indiana's claim for the pre-petition portion of the 1981 state corporate income tax liability is a pre-petition claim, not entitled to an administrative expense priority under § 503(b)(1)(B) of the Code. As such, the Trustee argues that the claim should be expunged due to the fact that it was filed three and one half years after the bar date for filing pre-petition claims had expired. Indiana argues that under its reading of §§ 503(b)(1)(B) and 507(a)(7) of the Code, this claim qualifies as an administrative expense priority, and since it was filed prior to the passage of the bar date set for filing administrative claims, it should not

be expunged. In addition Indiana contends that it is entitled to setoff a 1984 post-petition tax refund, undisputedly due and owing to the estate, against the alleged post-petition claim. This refund totals $6,500 together with accrued interest. (Indiana's Memorandum of Law at 10.)

### III. *Issue Presented*

The primary issue presented in the instant proceeding is whether the estate of a corporation which files a bankruptcy petition in the middle of its fiscal year, incurs an administrative expense liability for corporate income taxes allocable to the pre-petition period of that year, when the tax liability is not scheduled for determination until the close of the fiscal year.

### IV. *Discussion of Law*

#### A. *11 U.S.C. § 503(b)(1)(B)(i)*

Section 503(b)(1)(B)(i) of the Code states in relevant part: "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(6) [ (subsequently amended and renumbered 507(a)(7)) ] of this title ..." shall be allowed, after notice and a hearing, as an "administrative expense." Pursuant to § 507(a)(1) of the Code "administrative expenses" have a first priority in the order of distribution.[2]

Accordingly, under § 503, two prerequisites will determine whether a tax claim will be granted a first priority:

(1) the tax must not be specified in § 507(a)(7) (formerly numbered § 507(a)(6)) of the Code and

(2) the tax must be incurred by the estate.

*In re Higgins*, 29 B.R. 196, 201 (Bankr.N.D.Iowa 1983). The Indiana corporate income tax claim fails to satisfy either criteria.

(1) *Indiana's Claim is Specified in § 507(a)(7) of the Code:*

Section 507 of the Code reads in relevant part:

(a) The following expenses and claims have priority in the following order:
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required is last due, including extensions, after three years before the date of the filing of the petition....

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

Indiana contends that the *entire* tax liability for the tax year running from Dec. 1, 1980 through November 30, 1981 is a postpetition administrative expense even though the Debtor's petition was filed on March 11, 1981, well before the end of the tax year. Indiana bases this contention on the ground that because it had no right to the tax pre-petition, the entire tax claim, covering the pre- and post-petition period, is entitled to an administrative expense priority. Indiana cites the language of § 507(a)(7)(A)(i) which grants a seventh priority to income taxes "for a taxable year ending ... before the date of the filing of the petition...." to support its conclusion that the pre-petition period for corporate income taxes terminated on November 30, 1980, the last day of the tax year ending before the petition date. Accordingly, Indiana infers that any corporate tax liability incurred subsequent to that date is incurred by the estate. The inference is unfounded and Indiana cites no authority to support its' contention.

The only basis for Indiana's inference is its assumption that the entire 1981 fiscal year is one indivisible tax year terminating

---

2. 11 U.S.C. § 507(a) states: "The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28...."

post-petition. Under this view, the income generated prior to the filing of the petition is inseparable from the income generated post-petition.

■ While the post-petition estate is not a "wholly new entity" distinct from the pre-petition debtor, there is a definite cleavage which separates the two upon the filing of a bankruptcy petition. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). As discussed *infra,* the disputed liabilities of this post-petition estate do not penetrate the barrier of the filing date for purposes of imposing a post-petition, administrative expense tax liability on income earned pre-petition. Accordingly, in this context any income earned subsequent to the filing date is distinct from any pre-petition income. Therefore Indiana's conclusion that § 507(a)(7)(A)(i) controls is incorrect.

Although, the claim at issue does not fit within § 507(a)(7)(A)(i) of the Code, it does fit squarely within § 507(a)(7)(A)(iii) *supra.* The § 523(a)(1)(B) and (C) exceptions to discharge referred to in § 507 are inapplicable to this claim as § 523 only applies to "individual" not corporate debtors. *In re Trafalgar Associates,* 53 B.R. 693, 696 (Bankr. S.D.N.Y.1985) citing *In re Hooton Co.,* 43 B.R. 389 (Bankr.N.D.Ala.1984). *See also Yamaha Motor Corp. v. Shadco, Inc.,* 762 F.2d 668 (8th Cir.1985) (Section 523(a) is applicable to individual debtors and will not be read to include the corporate debtor.)

■ Accordingly the disputed claim is of a kind specified in section 507(a)(7) as it is for a tax "not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case." 11 U.S.C. § 507(a)(7)(A)(iii). Therefore, the first requirement establishing an administrative expense priority under § 503(b)(1)(B) of the Code, (*i.e.* that the tax not be specified in § 507(a)(7) of the Code) has not been met.

(2) *Indiana's Tax Claim Was Not Incurred by the Estate*

Section 503(b) of the Code, as noted above, classifies a tax incurred by the estate as an administrative expense. To de-

termine when a tax is "incurred", Debtor's Trustee cites a number of cases which hold "it is the date the taxes accrued rather than the date of assessment which controls." *United States v. Redmond,* 36 B.R. 932, 934 (D.Kan.1984) citing *In re Scrap Disposal, Inc.,* 24 B.R. 178, 180 (Bankr.S.D.Cal.1982); *see In re Overly-Hautz Co.,* 57 B.R. 932, 937 (Bankr.N.D. Ohio 1986); *In re Davidson Lumber Co.,* 47 B.R. 597, 598 (Bankr.S.D.Fla.1985). "[A] tax ... predicated on pre-petition liability incurred by the debtor *before* the filing of the petition should not be promoted to a first priority administrative expense merely because it is assessed after the petition is filed." *In re Westholt Mfg., Inc.,* 20 B.R. 368, 371 (Bankr.D.Kan.1982), *aff'd, United States v. Redmond,* 36 B.R. 932 (D.Kan.1984).

Applying these cases to the facts of the instant proceeding, the Trustee contends that the claim at issue represents taxes accrued and therefore incurred by OPM prior to its bankruptcy case, not taxes incurred by the estate. The Trustee therefore concludes that the claim at issue is not entitled to an administrative expense priority.

■ It must be noted that the facts of the instant proceeding are not totally analogous to those of the above cited cases. In each of those cases, while returns, assessments and payments were not due until the post-petition period, the taxes covered by the filed proofs of claims were for periods which either concluded prior to the time the debtor filed a bankruptcy petition and therefore were a sum-certain as of the filing date, *In re Overly-Hautz, Co.,* 57 B.R. 932; *In re Davidson Lumber Co.,* 47 B.R. 597; or the taxes in dispute covered a post confirmation period. *In re Westholt Mfg., Inc.,* 20 B.R. 368, *aff'd, United States v. Redmond,* 36 B.R. 932. The instant proceeding on the other hand, as noted above, involves a filed proof of claim for the pre-petition portion of a corporate income tax which could not be precisely determined until the end of the fiscal year, terminating post-petition. Nonetheless, as the claim at issue consists of taxes allocable to business activities during the pre-petition period,

that claim is not entitled to an administrative expense priority.

■ The legislative history to § 503(b)(1)(B) supports this conclusion. Administrative expenses should include taxes:

> which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on *income earned by the estate during the case.* Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in the first priority. [emphasis added].

S.Rep. No. 989, 95th Cong., 2d Sess. 66 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5852. Accordingly, to the extent that income is not earned by the estate during the case, but is instead earned by the pre-petition debtor, any tax liability on that income is not entitled to an administrative expense priority.

Indiana's argument that because it had no right to collect the tax covered by the disputed claim prior to the filing date, that claim is entitled to an administrative expense priority, is disingenuous. The definition of a claim includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(4).

That Indiana had a "right to payment" for corporate income taxes on pre-petition income is supported by the fact that under Indiana law, a corporation is required to estimate and make quarterly income tax payments despite the fact that its exact tax liability will not be determined until the end of its fiscal year. Ind.Code Ann. §§ 6–2.1–5–1; 6–3–4–4(c) (Burns 1984).[3] In addition, Indiana law permits Indiana to estimate a corporation's tax liability if the corporation itself fails to report the proper amount of such liability. Ind.Code Ann. § 6–8.1–5–1(a) (Burns 1984).[4] Since the claim at issue covered a tax liability on pre-petition income earned during the first quarter of the OPM's fiscal year, and since that sum could be estimated and was payable under Indiana law, the claim at issue is properly classified as a pre-petition claim and not an administrative expense claim. Indeed under the Code, a claim need not be provable in order to be allowed. "H.R. 8200 abolishes the concept of provability in bankruptcy cases. All claims against the debtor, whether or not contingent or unliquidated, will be dealt with in the bankruptcy case...." *In re Robinson,* 776 F.2d 30, 34 (2d Cir.1985), *rev'd on other grounds,* —— U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), *quoting* House Report at 180, 309, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6141. Accordingly, although the Debtor's exact tax liability was unknown on the petition date, Indiana could have filed an unliquidated, pre-petition claim in order to preserve its right to recover the sum in dispute.[5]

---

**3.** "(a) Except as provided in subsections (c) and (d) [ (inapplicable to this proceeding) ], a taxpayer shall file gross income tax returns with, and pay his gross income tax liability to, the department quarterly....

(b) With each return filed, a taxpayer shall pay to the department the remainder of:

(i) Either the estimated or the exact amount of gross income tax which is due for the particular quarter; minus

(ii) the amount of gross income tax which was withheld pursuant to IC 6–2.1–6 for the same quarter."

Ind.Code Ann. § 6–2.1–5–1 (Burns 1984).

"Every corporation subject to the adjusted gross income tax liability imposed by IC 6–3 shall be required to report and pay quarterly an estimated tax equal to twenty-five percent [25%] of such corporation's estimated adjusted gross income tax liability for the taxable

year, less the credit allowed by IC 6–3–3–2 for the tax imposed on gross income...."

Ind.Code Ann. § 6–3–4–4(c) (Burns 1984).

**4.** "If the department believes that a person has not reported the proper amount of tax due, the department shall make a proposed assessment of the amount of the unpaid tax on the basis of the best information available to the department. The amount of the assessment is considered a tax payment not made by the due date and is subject to IC 6–8.1–10 concerning the imposition of penalties and interest."

Ind.Code.Ann. § 6–8.1–5–1(a) (Burns 1984).

**5.** To the extent *In re International Match Corp.* would appear to warrant a contrary holding, that case is distinguishable. 79 F.2d 203 (2d Cir.1935). *International Match* held that a claim for a state franchise tax was properly

The policy underlying the scope to be afforded priorities under the Code similarly supports the conclusion that the claim at issue should not be afforded an administrative expense priority. Recently this court addressed the issue in an earlier opinion in this same case. *In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679 (Bankr.S.D.N.Y. 1986).

> The trend ... has been to erode the preferred status of taxes, [because] [a]s accelerating taxation absorbed greater percentages of the bankrupt's estate, Congress recognized that broad priority classifications hampered the goal of equitable distribution of the estate and penalized general creditors. [citations and footnote omitted]

*Id.* at 680 citing *In re Lorber Industries of California, Inc.*, 675 F.2d 1062, 1067–68 (9th Cir.1982)

The Court of Appeals for the Second Circuit similarly recognized this policy in *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98 (2d Cir.1986). The Court stated:

> Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, *statutory priorities are narrowly construed. Joint Industry Board v. United States*, 391 U.S. 224, 228 [88 S.Ct. 1491, 1493, 20 L.Ed.2d 546] (1968); *In re United Merchants & Manuf., Inc.*, 597 F.2d 348–49 (2d Cir. 1979); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir.1976). [I]f one claimant is to be preferred over others, the purpose should be clear from the statute. *Nathanson v. N.L.R.B.*, 344 U.S. 25, 29 [73 S.Ct. 80, 83, 97 L.Ed. 23] (1952). *See also Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984)

*Id.* at 100–01. Accordingly, the language of the Code, combined with relevant legislative history and the narrow judicial interpretation afforded priorities, all support denial of an administrative expense priority to the claim at issue.

This decision is consistent with other decisions in this Circuit which sanction apportioning a claim that encompasses both a pre- and a post-petition period. When the issue arose in the context of the priority to be afforded a claim for vacation pay, the Second Circuit held: "claimants are entitled to priority for vacation pay as an expense of administration only to the extent of the proportionate part of total vacation pay earned during the period from the beginning of the bankruptcy administration to the date of termination of employment." *Straus-Duparquet, Inc. v. Local U. No. 3 Int. Bro. of Elec. Wkrs.*, 386 F.2d 649, 650–51 (2d Cir.1967); *see also Trustees of Amalgamated Ins. Fund*, 789 F.2d at 104. To the extent the vacation pay was not earned "during the period from the beginning of the bankruptcy administration", the claim for vacation pay was not entitled to an administrative expense priority. *See Straus-Duparquet*, 386 F.2d at 650–651. Similarly, as the asserted claim in the instant proceeding is for corporate income taxes owing on income earned prior to the commencement of bankruptcy administration, the claim is not for taxes incurred by the estate. Therefore, the second requirement necessary to establish entitlement to an administrative expense priority under § 503(b)(1)(B)(i) of the Code (i.e. that the tax is incurred by the estate) has not been satisfied. Accordingly, the claim at issue is properly expunged as a late filed, pre-petition claim.

B. *Indiana's Setoff is Impermissible.*

▇▇▇ Pursuant to § 553 of the Code, parties must be mutually indebted in order to exercise the right of setoff.[6] *See In re*

expunged as not provable under § 64(a) of the Bankruptcy Act. *Id.* at 205. The tax was held not to be a provable debt of the debtor because the debtor's bankruptcy petition was filed in the middle of the debtor's fiscal year and the tax liability could not be determined until the end of the fiscal year. *Id.* Accordingly, since the tax could not be computed as of the petition date it was not provable and therefore not an

obligation of the debtor as of that time. As noted above under the Code, which amended the Bankruptcy Act which was applied in *International Match*, a claim need not be provable in order to be allowed.

6. Section 553 of the Code reads in relevant part: "Except as otherwise provided in this section and in section 362 and 363 of this title, this

*Hecht,* 41 B.R. 701, 703 and n. 4 (Bankr.S. D.N.Y.1984); *Hassett v. Spraque Electric Co. (In re O.P.M. Leasing Services, Inc.),* 30 B.R. 642, 650 (Bankr.S.D.N.Y.1983). The mutuality requirement is satisfied if the debts at issue are "owing between the same parties, in the same right or capacity, and ... [are] of the same kind or quality." *In re Braniff Airways, Inc.,* 42 B.R. 443, 449 (Bankr.N.D.Texas 1984). Accordingly, obligations owing between a creditor and a pre-petition debtor may not be setoff against obligations owing between that same creditor and the debtor's estate since the requisite mutuality of obligations is absent. *See In re O.P.M. Leasing Services, Inc.,* 30 B.R. at 650; *In re Shoppers Paradise, Inc.,* 8 B.R. 271, 277–78, 281 (Bankr.S.D.N.Y.1980).

██ Application of these principles to the instant proceeding warrants a finding that Indiana's setoff of the 1984 tax refund due and owing to O.P.M.'s estate, against O.P.M.'s pre-petition 1981 tax liability, is improper. While the tax refund is a post-petition debt existing between Indiana and the Debtor's estate, the corporate income tax owing for fiscal year 1981 is a pre-petition liability of OPM (not the Debtor's estate) to Indiana. Accordingly, even were Indiana's claim to be allowed under § 553 of the Code,[7] these debts could not be set-off, one against the other, due to lack of mutuality.

### C. *Debtor's Motion for Summary Judgment is Granted.*

There is no genuine issue as to any material fact and in accordance with the foregoing, the Trustee is entitled to relief in his favor as a matter of law. Pursuant to this courts findings and conclusions made at the hearing held on September 11, 1986, the first claim (M42150) is ordered expunged. *See supra* note 1 and accompanying text. As the remaining disputed claim fails to satisfy either of the two require-

ments necessary, in order to be classified as an administrative expense under § 503(b)(1)(B) of the Code, the debtor's motion for summary judgment is granted, the claim at issue (M42120) is expunged for being a late filed pre-petition claim and Indiana's setoff of the 1984 tax refund due O.P.M.'s estate is found to be an impermissible setoff. Accordingly, Indiana's motion for summary judgment is denied and because Indiana is "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order...." Indiana is directed to promptly pay the refund plus interest, to the Trustee pursuant to § 542(b) of the Code. 11 U.S.C. § 542(b)

IT IS SO ORDERED.

---

title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that

arose before the commencement of the case...."

7. Note that in accord with the above findings, this claim is properly expunged as a late filed pre-petition claim.