In the Matter of Charles Hal DAYHUFF, III, Barbara S. Dayhuff, Debtors.

Bankruptcy No. N92–10657–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Aug. 18, 1995.

Ralph L. Phillips, Albany, GA, for creditors Don and Margaret Seay.

Theo D. Mann, Mann & Wooldridge, P.C., Newnan, GA, for trustee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before this Court is the Motion to Approve Administrative Expense of Don and Margaret Seay (hereinafter "the Seays") pursuant to 11 U.S.C. § 503. This matter falls within the subject matter jurisdiction of the Court, see 28 U.S.C. § 157(b)(2)(A), (B), and will be disposed of as provided in the Findings of Fact and Conclusions of Law which follow.

## FINDINGS OF FACT

At the time of their bankruptcy filing, Barbara S. and Charles H. Dayhuff III (hereinafter "the Debtors") owned a commercial building situated at 2531 Lafayette Plaza Drive, Albany, Georgia (hereinafter "2531"). Although separately owned and operated, 2531 forms one unit of a six building office complex, known as Lafayette Plaza. At all times relevant to this matter, the Seays have owned the remaining five buildings in the complex.

The instant controversy draws into question the treatment of common areas in this Lafayette Plaza complex. As originally designed, the complex common areas fell subject to a series of cross easements, providing for their use and maintenance by the building owners. Under the terms of this arrangement, each owner paid a pro-rata portion of the common area maintenance expenses and property taxes, as calculated from his/her building's relative size. According to a revocable appointment, an organization directed by the Debtor, Mr. Huff, supervised the daily maintenance of the common areas.

On March 18, 1992, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code. Immediately thereafter, the Trustee assumed his duties of supervising the Debtors' assets. Pursuant to these duties, the Trustee began to lease out the 2531 structure. He did not, however, undertake any plans regarding the common areas of the Lafayette complex.

As owners of the bulk of the units in the complex, the Seays took it upon themselves to pay the tax and water bills associated with the complex. The Seays also assumed the maintenance of the common areas. Rather than hiring lawncare and janitorial services, however, the Seays chose to do this maintenance work themselves. Moreover, the Seays did not consult the Trustee or obtain his consent for their activities.

Ultimately, the Trustee abandoned the 2531 structure. Shortly thereafter, the Seays filed the instant Motion to Approve Administrative Expense, arguing that the Debtors' pro-rata share of common area maintenance and taxes should receive priori-

ty treatment under 11 U.S.C. § 503(b)(1)(A). According to the Seays, the Debtors' share of these expenses amounts to the following:

| TAXES- | | |
|---|---|---|
| 1992 | | $861.36 |
| 1993 | | $957.24 |
| 1994 | | $951.54 |
| | **Subtotal-** | **$2770.14** |

| MAINTENANCE | | |
|---|---|---|
| 1992 | | $865.01 |
| 1993 | | $1583.70 |
| 1994 | | $1578.25 |
| 1995 | | $721.48 |
| | **Subtotal-** | **$4748.44** |
| | **Total Claim Presented-** | **$7518.58** |

The Seays also have augmented the maintenance portion of their claim by compounding interest at the rate of 10% per year, thereby generating a total claim of $8367.44.

On July 14, 1995, this Court held a hearing to determine the validity of the Seays' claim for administrative expenses. At that time, the Trustee vigorously opposed the Seays' motion, presenting four separate grounds of objection. First, the Trustee pointed out that the estate had only recovered $15,000.00 from renting 2531 prior to abandonment. As such, the Trustee reasoned that the Seays' administrative expense claim excessively outweighed any consequent benefits to the estate. In his second argument, the Trustee informed the Court that parties closely associated with the Seays had bought 2531 in a post-abandonment sale for far below the market value. Accordingly, the Trustee reasoned that the Seays already had received a windfall at the estate's expense and should not receive yet another. As a third argument, the Trustee suggested to the Court that the Seays incurred the expenses at issue, not for the benefit of the estate, but for the benefit of their own ownership interests. Finally, the Trustee argued that, if classified as administrative expenses, these claims should not receive immediate payment due to a possibility that all administrative claims may not be payable from the limited assets on hand. Given the variety of legal and factual issues presented, this Court took the matter under advisement.

### CONCLUSIONS OF LAW

This matter turns on the scope and application of 11 U.S.C. § 503(b). In pertinent part, that section provides:

\* \* \* \* \* \*

After notice and a hearing, there shall be allowed administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case.

\* \* \* \* \* \*

Section 503(b)(1)(A)'s treatment of actual and necessary expenses marks a deviation from the principle of equality in distribution, justified by a desire to encourage post-petition dealings with the debtor. *Ala. Surface Mining Comm'n v. N.P. Mining Co., Inc. (In re N.P. Mining Co., Inc.)*, 963 F.2d 1449, 1453–54 (11th Cir.1992). As exceptions to the rule, however, the provisions for administrative priority warrant close scrutiny and narrow construction. *See Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 254–55, 42 L.Ed.2d 212 (1974); *In re D'Lites of America*, 108 B.R. 352, 355 (Bankr.N.D.Ga.1989) (Drake, J.). Bankruptcy courts have broad discretion in determining whether an administrative expense claim justifies allowance. *Younger v. United States (In re Younger)*, 165 B.R. 965, 967 (S.D.Ga.1994) (citations omitted). Moreover, the prospective holder of such a claim bears the burden of establishing that an actual and necessary post-petition expense in fact has taken place. *In re Communications Management & Info., Inc.*, 172 B.R. 136, 141 (Bankr.N.D.Ga.1994) (Murphy, J.) (citations omitted); *D'Lites*, 108 B.R. at 355. With these standards in mind, the Court will address each aspect of the Seays' administrative expense claim.

### I. The Common Area Taxes.

As generated by the City of Albany/Dougherty County tax office, the tax bills at issue contained an itemized schedule, allocating a portion of the common area taxes to each individual building. Under this allocation, the bill assessed 12.34%, or $2770.14, of

the total taxes for 1992–94 to the 2531 structure. To the extent that these bills assessed a specific portion of their costs to unit 2531, their payment presents an actual and necessary post-petition expense of the Debtors' estate.[1] Accordingly, the Court finds the tax portion of the Seays' claim to merit administrative expense classification pursuant to 11 U.S.C. § 503(b)(1)(A).

*II. The Common Area Maintenance Claims.*

While the Seays' claims for tax reimbursement merit administrative expense treatment, their claims for maintenance fees do not fare so well under the governing standards of evaluation. As noted previously, this Court will strictly construe all claims presented under section 503(b). *See Otte v. United States,* 419 U.S. 43, 53, 95 S.Ct. 247, 254–55, 42 L.Ed.2d 212 (1974); *In re D'Lites of America,* 108 B.R. 352, 355 (Bankr. N.D.Ga.1989) (Drake, J.). In the context of a section 503(b)(1)(A) claim, this means that the Court will afford a strict construction to the relevant terms "actual" and "necessary".

---

1. A growing majority of courts have held that the date of accrual rather than the date of assessment should govern the classification of tax-related claims. *See United States v. Redmond,* 36 B.R. 932, 934 (D.Kan.1984) (citations omitted); *In re Hillsborough Holdings Corp.,* 156 B.R. 318, 320 (Bankr.M.D.Fla.1993); *In re O.P.M. Leasing Serv. Inc.,* 68 B.R. 979, 983 (Bankr.S.D.N.Y.1987). Under this analysis, a tax, while assessed post-petition, nonetheless will not qualify as an administrative expense if the underlying tax liability *accrued* pre-petition. *See Hillsborough Holdings,* 156 B.R. at 320.

It, therefore, might appear that a portion of the 1992 tax bill should not qualify as an administrative expense, due to the fact that Debtors filed their Chapter 7 petition on March 18, 1992. Specifically, one might conclude that a portion of the 1992 tax accrued pre-petition and, therefore, should not qualify as an administrative expense. This Court, however, finds that such a conclusion would be in error.

All courts applying the accrual theory have done so in the context of income tax claims. *See, e.g., Redmond,* 36 B.R. at 932; *Hillsborough Holdings,* 156 B.R. at 318; *O.P.M. Leasing,* 68 B.R. at 979. Liability for income taxes accrues contemporaneously with the generation of the income. *O.P.M. Leasing,* 68 B.R. at 983–85. As such, the debtor may *incur* the tax expense pre-petition, even when no assessment ultimately takes place until after filing.

---

*D'Lites of America,* 108 B.R. at 355 (citing *In re Patch Graphics,* 58 B.R. 743, 745 (Bankr. W.D.Wis.1986)).

■ Here, the Seays have not presented a claim for "actual" expenses arising from the maintenance of the common areas. The Seays have not come to this Court seeking reimbursement for expenses they incurred through hiring an individual to perform the maintenance in question. Rather, they seek compensation for nothing more than their individual labors and time in performing the maintenance tasks themselves. The Seays do not hold themselves out as professional janitors or lawn keepers. Moreover, they have not presented this Court with any evidence of tangible expenses associated with their maintenance projects. Such claims, based solely upon expenditures of non-professional time by the claimant, do not constitute "actual" expenses for the purpose of 11 U.S.C. § 503(b)(1)(A).[2] Consequently, this portion of the Seays' claim cannot satisfy the basic pre-requisites for administrative expense treatment. *See* 11 U.S.C. § 503(b)(1)(A).

---

By contrast, liability for property or ad valorem taxes is triggered by ownership of the taxed property on the date of assessment. That is, notwithstanding any other fact, whoever happens to own the property in question on the date of assessment will bear the burden of that property or ad valorem tax. Thus, these taxes may be said to actually accrue on the date of assessment. When one applies the accrual theory in the context of property or ad valorem taxes, they, therefore, will find a different standard of timing in play, one focusing exclusively upon the date of assessment.

Applying this standard to the facts at hand, the Court notes that, although a portion of the taxed year had run before the filing date, the assessment itself came post-petition. Accordingly, the entire 1992 tax debt was incurred post-petition and qualifies for administrative expense treatment.

2. As one court concluded when facing similar facts:

> [The claimant] did not actually incur any out-of-pocket expenses in providing the labor necessary to care for [the debtor's] cattle, nor did he have any agreement setting the rate at which such labor was to be provided. All of the labor was provided by him and his family. Thus, any claim for administrative expenses must be reduced [by that amount].

*In re Hayes,* 20 B.R. 469, 472 (Bankr.W.D.Wis. 1982).

Aside from the illusory nature of the Seays' maintenance expenses, this Court notes that a separate obstacle would prevent administrative expense treatment of this claim. As a general rule, creditors cannot receive administrative priority treatment of expenses which they incurred to benefit themselves, rather than the debtor's estate. *See Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir.1994) (citations omitted); *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 871 (7th Cir.1989); *Wolf Creek Collieries Co. v. GEX Ky., Inc.*, 127 B.R. 374, 379 (N.D.Ohio 1991) (citations omitted); *In re Communications Management & Info., Inc.*, 172 B.R. 136, 143 (Bankr.N.D.Ga. 1994) (Murphy, J.); *D'Lites of America*, 108 B.R. at 357 (citations omitted). As owners of nearly all the buildings in the Lafayette Plaza complex, the Seays had a pressing, independent interest in the maintenance and condition of the common areas. This Court finds it clear that this personal interest, rather than a desire to benefit the estate, motivated the Seays' maintenance activities. Because the Seays maintained the common areas solely in pursuit of such a self interest, their associated expenses will not qualify for administrative priority. *Wolf Creek*, 127 B.R. at 376; *D'Lites of America*, 108 B.R. at 357.

*III. The Seays' Right to Immediate Payment.*

Having established that the Seays' tax claim qualifies for administrative expense classification, while their maintenance claim does not, this Court must address the Seays' right to immediate payment of that aspect of their claim which has qualified under 11 U.S.C. § 503(b)(1)(A). As the Eleventh Circuit recently pointed out, "the determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court." *Varsity Carpet Serv., Inc. v. Richardson, (In re Colortex Ind., Inc.)*, 19 F.3d 1371, 1384 (1994). Where, due to limited funding, a threat exists that all administrative claims may not be satisfied, immediate payment of one claim should not proceed to the potential detriment of other administrative claimants. *Varsity Carpet Serv., Inc. v. Richardson, (In re Colortex Ind., Inc.)*, 146 B.R. 881, 888 (N.D.Ga.1992) *aff'd*, 19 F.3d 1371 (1994). Here, the Trustee has expressed a fear that existing and future administrative claims currently suffer from such a threat of incomplete satisfaction. This Court finds the Trustee's concerns to be well founded and, therefore, will deny the Seays' request for immediate payment of the tax claims which qualify as administrative expenses.

### CONCLUSION

In summary, the Seays' $2770.14 claim for common area taxes qualifies for administrative expense treatment under 11 U.S.C. § 503(b)(1)(A). Their $5597.30 claim for maintenance does not meet section 503(b)(1)(A)'s criteria, however. Lastly, this Court finds sufficient cause not to allow immediate payment of that aspect of the Seays' claim which does qualify as an administrative expense. As such, the Seays' Motion to Approve Administrative Expense hereby is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**