**In re UNITED TRUCKING SERVICE INC., a Michigan corporation, Debtor.**

**UNITED TRUCKING SERVICE, INC., Plaintiff–Appellant,**

v.

**TRAILER RENTAL COMPANY, INC., Defendant–Appellee.**

**No. 87–1065.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1987.

Decided July 7, 1988.

Thomas B. Radom (argued), Birmingham, Mich., for plaintiff-appellant.

Sidney L. Frank (argued), Troy, Mich., for defendant-appellee.

Before KEITH and WELLFORD, Circuit Judges, and HULL\*, Chief District Judge.

WELLFORD, Circuit Judge.

In 1977 Great Dane Trailers, Inc., entered into an eight-year equipment lease with plaintiff-appellant United Trucking Service, Inc. ("United"), for the rental of fifty-five Great Dane trailers. The lease included a provision requiring United, the lessee, to maintain the trailers in good condition and to make repairs at its own expense. Defendant Trailer Rental Company ("TRC") is the successor in interest of Great Dane Trailers, which is not a party to this controversy.

In 1983, United filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Shortly thereafter, TRC filed a petition in the bankruptcy court to compel United either to assume or reject the equipment lease. TRC asserted that United, the debtor in possession, had failed to maintain the trailers in good condition and repair and that United's continued possession of the trailers would result in even greater deterioration and damage to TRC. In late December 1983 the bankruptcy court gave United thirty days in which to assume or reject the lease; United failed to respond. TRC then filed a second petition expressing its concern about the trailers' condition and seeking action to protect its asserted interests.

---

\* THE HONORABLE THOMAS G. HULL, United States District Court for the Eastern District of Tennessee, sitting by designation.

In early May 1984 the bankruptcy court ordered United to produce the trailers for inspection and to provide proof of insurance. United provided only four trailers for inspection. The bankruptcy court then entered a stipulated order, later amended, that required United to make all the trailers available for inspection, or the lease would be deemed rejected under 11 U.S.C. § 365 and United ordered to return all the trailers to TRC. United's failure to make the trailers available for inspection triggered what was deemed an automatic rejection, and during the next two months United returned all but two of the trailers (which United claimed were stolen before the Chapter 11 filing) to TRC. The trailers were in a state of disrepair, and TRC claims some had been stripped.

TRC then filed with the bankruptcy court applications for payment of administrative expenses in the aggregate amount of $98,-166.41, including repair estimates for fifty-three trailers, the casualty loss value of the two stolen trailers, and the cost of replacing certain tires deemed to be commercially valueless. In March 1985 one of the stolen trailers was located and returned to TRC, which modified its claim with regard to that trailer.

After evidentiary hearings regarding TRC's applications, which were resisted by United, the bankruptcy judge rendered a decision allowing TRC an administrative expense claim in the principal amount of $72,010.00 ($65,264.31 for repairs to fifty-four trailers, $1,950.00 to replace tires, and $4,795.69 as the casualty loss value of the stolen trailer). Later, the court made an additional award to TRC of interest on the principal award accruing from September 30, 1984, which the court designated "the date Trailer Rental ... filed its Application for Payment of Administrative Expenses."[1]

United appealed the bankruptcy court's decision to district court. The district court, without oral argument, rendered a memorandum opinion and order affirming the bankruptcy court's decision, and this appeal ensued. We remand certain aspects of this case, and reverse as to others.

1. *Post-petition damages as an administrative expense*

■ Section 503 of the Bankruptcy Code, 11 U.S.C. § 503, establishes criteria for the allowance of administrative expenses:

> § 503. Allowance of administrative expenses
>
> . . . .
>
> (b) After notice and a hearing, there shall be allowed, administrative expenses, ... including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, ...[2]

A creditor such as TRC seeks to characterize its claim against the debtor as an administrative expense in order to enjoy first priority in payment under § 507(a)(1). *See, e.g., In re Baldwin–United Corp.,* 43 B.R. 443 (S.D.Ohio 1984). The purpose of these provisions of the Bankruptcy Code is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services. *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976). Only those debts, however, that arise *after* the filing of the bankruptcy petition may be accorded administrative expense status. *See id.* at 954–55; *Baldwin,* 43 B.R. at 453.

In order to qualify a claim for payment as an administrative expense

> a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantial-

---

1. In fact, the record shows that Trailer Rental filed its application on September 10, 1984.

2. Neither party on appeal challenges the applicability of § 503(b)(1)(A) to the type of claim presented in this case. According to the bankruptcy court, the parties stipulated that damages

resulting from injuries to the trailers that occurred post-petition should be treated as an administrative expense. We must still decide whether the damages claimed can be accorded § 503 priority consistently with *In re White Motor Corp.,* 831 F.2d 106 (6th Cir.1987).

ly benefitted the estate. [*In re Mammoth Mart, Inc.*, 536 F.2d] at 954.

A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984). However, if the inducement came from the debtor-in-possession, then the claims of the creditor are given priority. *Id.* at 586.

*In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987) (footnote omitted). Application of the *White Motor* test to this case would impose upon TRC the burden of proving its entitlement to priority under § 503. United, as debtor in possession, did not induce any action on TRC's part after its bankruptcy filing on November 1, 1983. United merely continued to possess the trailers pursuant to the pre-petition contract with TRC, effective September 29, 1977.

We must decide whether the test established by *Mammoth Mart* and followed in *White Motor Corp.* is applicable to these facts. *Mammoth Mart, In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984), and *White Motor Corp.* all dealt with claims arguably arising from goods or services actively sought and provided by the claimant-creditor to the bankrupt estate. In each of these cases, it was contended that the creditor's *post*-petition action brought about the liability. The proper focus was on the inducement involved in causing the creditor to part with its goods or services. *Cf. Mammoth Mart*, 536 F.2d at 954–55 & n. 4. In contrast, this case involves a claim arising from United's post-petition continued use of leased equipment that allegedly was not in accordance with the terms of the pre-petition lease agreement. We therefore do not believe the key inquiry is on inducement as in *Mammoth Mart, Jartran*, and *White Motor.*

*American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119 (2d Cir.1960), we believe, articulated the appropriate rationale in a case of this kind:

> The right to priority in the event the trustee or debtor in possession receives benefits under the [executory] contract during the interval between the filing of the debtor's petition and the rejection of the contract "is an equitable right based upon the reasonable value" of the benefits conferred, rather than upon the contract price.
>
> . . . .
>
> . . . [T]he purpose of according priority in these cases is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him.

*Id.* at 124, 126. Thus, administrative expenses under § 503 in this case, if allowable, should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreement. *In re Dixie Fuels, Inc.*, 52 B.R. 26, 27 (Bankr.N.D.Ala.1985).

In light of the Act's purpose of enabling the continued operation of insolvent businesses, we conclude that the bankruptcy court was correct in treating TRC's post-petition damages claim as an administrative expense under § 503. United's asserted failure to maintain and repair the trailers in accord with the lease obligation allowed United, the debtor, to use the money saved and not paid for TRC's benefit as contemplated under the lease, to continue its operations. This breach and misuse of TRC's trailers did benefit the bankrupt estate. Accordingly, the damages under the breached lease covenant, to the extent that they occurred post-petition, provided benefits to the bankrupt estate and were properly accorded priority under § 503 to TRC. *Accord In re International Coins & Currency, Inc.*, 18 B.R. 335 (Bankr.D.Vt.1982) (damages to rented real property allowed as administrative expense).

Having decided that priority as an administrative expense is appropriate for TRC's claim reflecting post-petition breach of contract in United's failure to maintain the

leased trailers, we must next decide how much in administrative expense is proper on this record.

■ The bankruptcy court found that TRC's claim based on the casualty loss value of the unrecovered stolen trailer and the repair estimates for the recovered stolen trailer should be allowed as an administrative expense. The district court affirmed this decision, finding that United had not provided evidence that the trailers were stolen pre-petition. Neither court noted, however, that United and Trailer Rental had stipulated in May 1985, as part of a pretrial statement, that the two trailers were "stolen prior to the inception of bankruptcy" and that one was "found and returned to Trailer Rental" in March 1985. This stipulation was binding on the parties and on the court. The only issues remaining regarding the two stolen trailers, after giving effect to the stipulation, were the exact dates of the thefts, whether United continued to pay rent on the stolen trailers, and the casualty loss value of the unrecovered trailer.

The bankruptcy court erred in allowing claims arising from the stolen trucks as an administrative expense. As indicated in our prior discussion, § 503 priority should be granted only to reflect actual value conferred on the bankrupt estate. *In re Dixie Fuels*, 52 B.R. at 27. Because the two trailers were never in United's possession after the date of bankruptcy, according to the stipulation, they could not have been of any benefit to the bankrupt estate. Similarly, United's obligation to pay TRC the casualty loss value of the stolen trailers must be regarded as arising pre-petition. Whether United continued to pay rent on the stolen trailers after the bankruptcy filing is irrelevant. Because the estate never possessed or received any benefit from the two trailers, any claims of TRC against United with regard to those trailers must have arisen *pre-petition* and are properly treated as general unsecured claims rather than administrative expenses. We reverse the decision of the district court in this respect.

### 2. *Calculation of Damages*

■ In considering which of the damages sustained by the TRC trailers should be deemed to have occurred post-petition for the purpose of calculating damages entitled to § 503 priority, the bankruptcy court found:

Regardless of the extent to which the creditor may have a claim arising from the breach of the duty to repair arising pre-petition, it also has that same claim arising post-petition.

Moreover, the evidence overwhelmingly indicates that the vast and substantial majority of the injuries themselves actually occurred post-petition.

And in the circumstances, the Court is not quite sure that it is fair to put the burden of proof on the creditor to establish when the injuries occurred, pre or post-petition, in light of the fact that the Debtor would have essentially all of the evidence of that in its possession.

Nevertheless, without directly holding that the burden of proof should thereby shift, the Court concludes that as a matter of law the claim is a post-petition claim and pursuant to the stipulation and the language of the statute, the cases and the equities and policy, the claim should be accorded an administrative status.

The district court affirmed this ruling, blaming United in large part for failing to provide the trailers for earlier inspection.

In reviewing the bankruptcy court's factual determination regarding when the damages to the remaining trailers occurred, we apply a "clearly erroneous" standard. Bankruptcy Rule 8013 provides in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *See also Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251, *on remand*, 579 F.2d 400 (1978) (bankruptcy judge's findings should not be disturbed absent "cogent evidence of mistake or miscarriage of justice").

The evidence in this case regarding the time frame in which the injuries and damages to the trailers occurred is inconclusive. Documentary evidence showed that United had not adhered to its regular schedule of maintenance and repair during the period between its filing of bankruptcy and its rejection of the trailers. TRC's witness, Nowatzke, inspected approximately twenty trailers in the summer of 1983 and then inspected approximately ten trailers in March 1984. He testified that the trailers inspected in March were in worse condition than those inspected in 1983, before the bankruptcy filing. The evidence is silent, however, as to whether any of the trailers he inspected in March 1984 were the same ones he had seen the prior summer. Nowatzke also testified that it appeared to him that the trailers had been neglected in the most recent months of use by United. He was not able to testify, however, to what extent the damages had occurred since the filing of bankruptcy. Other witnesses testified that many of the damages that the trailers had suffered were of the type that accumulate over time and were an inherent result of frequent use.

In view of this evidence, we are satisfied that the bankruptcy court erred in concluding that TRC's *entire* claim in this respect was a post-petition claim. United had operated the trailers under the lease for six years prior to its bankruptcy filing and for only eight or nine months following its filing. While some evidence may be construed to support a finding that a substantial part or even a majority of the damages occurred post-petition, there is no basis for finding TRC's claim qualifies as an administrative expense in its entirety. Section 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors. *Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982). The bankruptcy court should make findings as to what proportion of the damages occurred prior to filing due to normal wear and tear and aging of the equipment. Only post-filing damages may be treated as an administrative expense after this allocation is made.

■ After deciding to treat all the injuries or damages to the trailers as arising post-petition, the bankruptcy court determined that the measure of damages should reflect the reasonable cost of making the repairs required under the lease, limited by the amount of the trailers' diminution in value. The bankruptcy court deemed irrelevant the cost of the repairs actually made by TRC, basing its award instead on repair estimates, based essentially on the reliability of Nowatzke's testimony.

Giving due regard to the bankruptcy court's credibility findings, we conclude that the bankruptcy court's acceptance of the repair estimates, instead of the cost of actual repairs made, was not clearly erroneous. We remand this issue to the bankruptcy court to determine and allocate the damages that occurred after the filing of the petition. On remand, the court should take into account the proof demonstrating that the estimated cost of making repairs was economically unjustified in some instances.

### 3. *Allowance of Interest*

■ In contesting the award of interest on the administrative expenses, United relies on several cases denying such interest. We have not previously addressed this issue. Section 503 does not specifically include interest as an item of allowable administrative expense. Even when interest is claimed as an integral part of a post-petition tax assessment (the tax itself being treated as an administrative expense), the question of allowing interest has divided the courts deciding this issue. *See* 3 *Collier on Bankruptcy* § 503.04 at 503–39 (15th ed. 1979).

Interest on unpaid post-petition taxes was found entitled to first priority as an administrative expense in *In re Thompson*, 67 B.R. 1 (Bankr.N.D.Ohio 1984), which held that § 503(b)'s enumeration of administrative expenses was non-exclusive and that interest on the taxes could be considered an actual and necessary expense of preserving the estate under § 503(b)(1)(A).

*Id.* at 2–3. The court reasoned that not treating the interest on taxes as an administrative expense effectively would

> grant the debtors an interest free loan at the expense of the government. If the debtors choose to finance their reorganization effort with funds that would otherwise be used to pay their taxes, then interest on the taxes may fairly be considered as an actual and necessary cost and expense of preserving the estate allowable as an administration expense under section 503(b)(1)(A). Indeed, section 364 of the Bankruptcy Code specifically recognizes that the cost of unsecured credit is allowable as an administrative expense under section 503(b)(1).

*Id.* (citation omitted). *See also United States v. Friendship College,* 737 F.2d 430 (4th Cir.1984) (interest allowed on unpaid and past due withholding taxes).

Interest on administrative expense claims, however, has been denied in *In re Lumara Foods of America, Inc.,* 50 B.R. 809 (Bankr.N.D.Ohio 1985), *In re John Clay and Co., Inc.,* 43 B.R. 797 (Bankr.D. Utah 1984), and *In re Stack Steel & Supply Co.,* 28 B.R. 151 (Bankr.W.D.Wash. 1983). While we have not previously addressed this issue, we are not persuaded on this record that allowance of interest on this type of administrative expense was a proper exercise of discretion, or that it is authorized by the Bankruptcy Code. The bankruptcy judge stated as a basis for this interest award only "that interest is necessary from the date of filing of this motion in order to make the debtor whole for its losses.... [T]he court concludes in it's [sic] discretion that [the award of interest] would be [appropriate], essentially for the reasons as stated by Mr. Frank [TRC's counsel]." To summarize Mr. Frank's reasons: "[T]he damage has occurred and is costing my client money on a daily basis, either through expending money in repairs, or in leasing out a trailer at less value ... so it's costing him money every day or has already costed him money." The bankruptcy judge characterized this assertion as an argument "that the pre-judgment interest becomes an element of the damages, an element of the claim itself."

We are remanding this case for reallocation of damages, concluding that some of the loss in value of the trailers that the bankruptcy court awarded as damages in fact arose pre-petition as a result of six years heavy use prior to the bankruptcy filing. We remand also the interest question for the bankruptcy court's further consideration of the case law or other authority dealing with the question of interest on administrative expense claims, particularly those involving non-tax claims. Every administrative expense claimant may well claim that his loss, his deprivation of revenues, or his damage has "cost him money," or caused him to spend money he might not otherwise have elected or been forced to spend. We agree with the bankruptcy court that allowance of interest is usually not "appropriate";[3] we simply require a more reasoned statement for treating this case as the unusual one in which equity might impel an award of interest despite the corresponding detriment to unsecured, unpreferred general creditors of United.

Accordingly, we AFFIRM the decision of the bankruptcy court, affirmed by the district court, that the claim of TRC may be treated as an administrative expense claim under § 503. We REMAND for redetermination the amount of the post-petition expense claim for the reasons stated. We also REMAND, for further consideration and articulation of its basis, the decision regarding the allowability of interest on the administrative expense award.

**3.** We do not decide at this point whether allowance of interest on a non-tax administrative expense claim is justified at all under § 503. The bankruptcy court will necessarily reconsider and decide this legal question on remand. The district court did not discuss this issue, but merely affirmed the allowance of interest as "supported by law." Neither the bankruptcy court nor the district court has set out adequately the basis for its decision in this regard. *Cf. United Savings Ass'n of Texas v. Timbers of Inwood Forest,* ―― U.S. ――, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (undersecured creditor of Chapter 11 debtor not entitled to interest on its collateral for delay caused by automatic stay in foreclosing on collateral).