In the Matter of GEX
KENTUCKY, INC., Debtor.

Bankruptcy No. 686–00506.

United States Bankruptcy Court,
N.D. Ohio, E.D.

Nov. 22, 1988.

John Schwemler of Brouse & McDowell, Akron, Ohio, R. Terrance Rodgers of King, Betts & Allen, Charleston, W. Va., for Wolf Creek Collieries Co.

Jeffrey Baddeley of Squire, Sanders & Dempsey, Cleveland, Ohio, for debtor.

Michael Geller, Esq., Dallas, Tex., for P.W. Gifford & T.T. Colley.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presented is the motion of Wolf Creek Collieries Company (Wolf Creek) seeking administrative expense treatment pursuant to 11 U.S.C. § 503(b)(1)(A) for advances made by it to the debtor for expenses incurred from January 1, 1988 to May 19, 1988. Objections to the motion were filed by P.W. Gifford, T.T. Colley and the debt-

or. A hearing was held on September 29, 1988 at which time evidence was introduced and arguments of counsel were heard.

## FACTS

GEX Kentucky, Inc. filed for relief under Chapter 11 of Title 11 of the United States Code on April 18, 1986. The debtor continued in the operational management of its business and property as debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108. The debtor was unable to formulate a plan of reorganization and its exclusive time to file a plan under 11 U.S.C. § 1121 expired on December 14, 1986.

Thereafter, on December 1, 1987, the major secured creditor, Pikeville National Bank and Trust Company (PNB) filed plans of reorganization for the debtor and its parent corporation, General Exploration Company. These plans of reorganization contemplated the sale of the debtor's assets and the Kentucky assets of General Exploration Company to Wolf Creek for $9,750,000.00. Wolf Creek, on October 20, 1987, had entered into a letter of intent with PNB to purchase these assets. The plans of reorganization, after various amendments, were confirmed by the court on May 20, 1988, with the control of the debtor's assets being transferred to Wolf Creek on the same date.

Pending confirmation of the plans of reorganization and after January 1, 1988, Wolf Creek began advancing money to the debtor for the payment of certain expenses such as insurance, payroll and mine maintenance, inasmuch as the debtor had no operating funds from which to make these payments.[1]

The procedure used by the parties to pay these expenses was for the debtor to submit a request to PNB, which after reviewing the request would notify Wolf Creek of the amount of money needed. Wolf Creek would then deposit the money directly into the debtor's account at PNB. The debtor would thereafter issue checks to pay the

expenses. The advances Wolf Creek seeks to recover total $369,548.24.[2]

## DISCUSSION

Wolf Creek's motion is governed by 11 U.S.C. § 503 which provides in relevant part:

> (a) An entity may file a request for payment of an administrative expense.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
>
> \*    \*    \*    \*    \*    \*

Expenditures must meet the following criteria to be allowed as administrative expenses: (1) the expenditures must have been for actual expenses, (2) they must have been necessary; and (3) the entity incurring the expenses must have undertaken them in order to benefit the estate as a whole, not to further its own self-interest. *In re Hayes,* 20 B.R. 469 (Bankr.W.D. Wis.1982); *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104 (Bankr.S.D.N.Y.1982); *In re McK, Ltd.,* 14 B.R. 518 (Bankr.Col.1981). The last of the three requirements, it has been said, is to "insure that unsecured creditors are not forced to bear the burden of the expenses incurred by a creditor acting in his own interest." *In re Hayes,* 20 B.R. at 473.

In the instant matter, it has been stipulated by the parties that the payments were actually made and were incurred for the protection and preservation of the debtor's assets. Therefore, the sole issue before the court is whether Wolf Creek undertook these payments in order to benefit the estate as a whole or to further its own interests. It is therefore necessary to attempt to ascertain Wolf Creek's motivation.

It is difficult for the court to find any reason for Wolf Creek to have paid these

---

1. Prior to January 1, 1988, these expenses were paid by PNB.

2. Wolf Creek originally sought the sum of $381,785.01 but reduced its demand at the hearing.

expenses beyond the protection of its own self-interest. First, Wolf Creek did not begin advancing money until January 1, 1988, after a plan of reorganization had been filed that contemplated Wolf Creek's purchase of the protected assets.

Secondly, Wolf Creek had the most to gain by the maintenance and protection of the assets. The letter of intent obligated Wolf Creek to purchase the assets· and obviously, it would be beneficial to assure their operational readiness at such time as Wolf Creek would assume possession. Finally, the letter of intent absolved PNB of any warranties as to the assets and their condition.

Wolf Creek argues that even though it was obligated to purchase the assets, there was no guarantee that PNB's proposed plans of reorganization would be confirmed by the court. However true this may be, it ignores the reality that such plans were confirmed and Wolf Creek obtained possession of maintained assets.

Additionally, the court is hard pressed to find a benefit that was bestowed upon the unsecured creditors by Wolf Creek's payments. The price that Wolf Creek paid for the assets was not contingent upon their condition. Whether the assets were maintained or left idle, Wolf Creek was still obligated to pay $9,750,000.00. It is well established that expenses incurred to preserve a debtor's estate must benefit all creditors to be compensable as administrative expenses. *In re O.P.M.*, 23 B.R. at 104 (citations omitted).

An order in accordance herewith shall issue.