**WOLF CREEK COLLIERIES CO., Plaintiff,**

v.

**GEX KENTUCKY, INC., et al., Defendant.**

No. 89–CV–0001.

United States District Court, N.D. Ohio, E.D.

April 4, 1991.

Timothy A. Barry, John A. Schwemler, Brouse & McDowell, Akron, Ohio, R. Terrance Rodgers, King, Betts & Allen, Charleston, W.Va., for appellant.

Jeffrey Baddeley, Porter, Wright, Morris & Arthur, Cleveland, Ohio, for appellee GEX Kentucky, Inc.

Michael L. Geller, Dallas, Tex., for appellees T.T. Colley and P.W. Gifford.

Stephen C. Rodeheffer, Kimble, Stevens, Young, Clark & Rodeheffer, Portsmouth, Ohio, for appellee Jack J. Blazer.

## ORDER

SAM H. BELL, District Judge.

Presently pending before this court is an appeal filed by Wolf Creek Collieries Company from a Memorandum of Decision of the Bankruptcy Court for the Northern District of Ohio, Case No. 686–00506, *Matter of GEX Kentucky, Inc.*, 103 B.R. 863 (Bkrtcy.N.D.Ohio 1988). In the case below, the bankruptcy court held that Wolf Creek's advancement of funds to the appellee debtor GEX Kentucky, Inc. (hereinafter GEX) was not entitled to administrative expense priority under 11 U.S.C. § 503(b)(1)(A) and § 507(a) because the funds were advanced primarily in furtherance of Wolf Creek's own interests rather than those of the estate. Appellees GEX, P.W. Gifford, and T.T. Colley have filed

briefs in support of affirmance of the bankruptcy court's decision.

## I. BACKGROUND

On April 18, 1986, GEX and other related entities filed for relief under Chapter 11 of Title 11 of the United States Code. GEX continued its operations as debtor in possession but did not submit a plan of reorganization. On September 1, 1987, GEX ceased its operations because, from this day forward, it was without funds.

On December 1, 1987, Pikeville National Bank and Trust Company (hereinafter PNB) filed plans of reorganization for GEX. PNB was the major secured creditor in the amount of approximately $3,300,000. As part of the plans, PNB and Wolf Creek agreed that Wolf Creek would acquire all of the assets of GEX and some assets of its parent corporation, General Exploration Company, for $9,750,000. The plans provided for this transaction which was manifested in a letter of intent entered into between PNB and Wolf Creek in October of 1987.

PNB had been advancing certain funds to GEX for payment of certain postpetition expenses of the bankruptcy estate until the end of 1987. The payments covered mine maintenance, payroll, insurance, utilities, property taxes, lease payments, and other expenses related to the assets of GEX. As part of the agreement between PNB and Wolf Creek, however, Wolf Creek assumed payment of these expenses on January 1, 1988. From this date until May 20, 1988, the date the plan of reorganization was confirmed by the bankruptcy court, Wolf Creek advanced the sum of $369,548.24 to GEX. On May 20, 1988, the control of GEX's assets was transferred to Wolf Creek. The parties stipulated that the advances made by Wolf Creek "were actually made and were incurred for the protection and preservation of the debtor's assets." 103 B.R. at 864.

On June 24, 1988, Wolf Creek filed a motion requesting reimbursement for its advances in the form of administrative expenses under 11 U.S.C. § 503(b)(1)(A). The bankruptcy court held a hearing on this issue on September 29, 1988. At the hearing, GEX argued that the Wolf Creek payments were not entitled to administrative expense priority because the advances were made primarily out of Wolf Creek's self-interest rather than for the estate's benefit. Wolf Creek argued that the estate indisputably benefitted and that the payments were made as an actual and necessary cost of preserving the estate.

The bankruptcy court stated the issue in the following manner:

[T]he sole issue before this court is whether Wolf Creek undertook these payments in order to benefit the estate as a whole or to further its own interests. It is therefore necessary to ascertain Wolf Creek's motivation.

103 B.R. at 864. The court found it difficult "to find any reason for Wolf Creek to have paid these expenses beyond the protection of its own self-interest." *Id.*, 103 B.R. at 864–65. The court did not deny that the estate benefitted by the Wolf Creek payments, but found on the whole that this was not the primary motivation behind the advances and, thus, the payments were not administrative expenses within the meaning of § 503(b)(1)(A). The court found the following facts to be, on balance, dispositive of the self-interest issue.

1. Wolf Creek did not begin advancing money until January 1, 1988, after a plan of reorganization had been filed that contemplated Wolf Creek's purchase of the protected assets. 103 B.R. at 865.

2. Wolf Creek had the most to gain by the maintenance and protection of the assets. The letter of intent obligated Wolf Creek to purchase the assets and obviously, it would be beneficial to assure their operational readiness at such time as Wolf Creek would assume possession. *Id.*

3. The letter of intent absolved PNB of any warranties as to the assets and their condition. *Id.*

In addition, the bankruptcy court noted the rule that "expenses incurred to preserve a debtor's estate must benefit all creditors to be compensable as administrative ex-

penses." *Id.* (citation omitted). With this in mind, the court found that the payments made did not benefit the unsecured creditors of GEX because Wolf Creek was obligated to pay $9,750,000 for the assets whether they were maintained or left idle. *Id.* In other words, the $9,750,000 was to be paid to creditors of GEX regardless of the assets' condition; thus, payments which maintained the assets did not bestow any benefit upon the creditors.

Wolf Creek filed its notice of appeal on December 12, 1988, and a brief in support on January 19, 1989. The appellees filed briefs on February 3, 1989, and Wolf Creek filed a reply brief on February 17, 1989.

## II. ANALYSIS

■ The standard to be applied when reviewing findings of fact entered by a bankruptcy court is that such findings will not be set aside unless clearly erroneous. *See* Bankruptcy Rule 8013. In other words, a bankruptcy court's findings of fact are not to be disturbed unless there is "most cogent evidence of mistake or miscarriage of justice." *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir.1972), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). *See also In re Edward M. Johnson and Associates, Inc.*, 845 F.2d 1395, 1401 (6th Cir.1988). Further, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. The clearly erroneous standard was explained by the Supreme Court in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), as follows:

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*See also In re Southern Industrial Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987). The Supreme Court has further enunciated this principle as follows:

This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 [70 S.Ct. 177, 179, 94 L.Ed. 150] (1949); see also *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 [102 S.Ct. 2182, 72 L.Ed.2d 606] (1982).

*Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1984).

■ A bankruptcy court's conclusions of law, on the other hand, are subject to *de novo* review on appeal. *In re Edward M. Johnson*, 845 F.2d at 1398. Also, "if a finding of fact is premised upon an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule." *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 209 (5th Cir.1983).

Wolf Creek appeals five conclusions drawn by the bankruptcy court. Wolf Creek designates the issues as follows:

1. The bankruptcy court erred as a matter of law in the denial of allowance on a priority basis of the Wolf Creek claim.
2. The bankruptcy court erred in a clearly erroneous sense in the finding of

fact that Wolf Creek advanced its own interests and not those of the estate with its advances.

3. The bankruptcy court erred as a matter of law in the order appealed which adopts an erroneous view that a proposed purchaser may not recover advances made by it prior to an asset sale.

4. The bankruptcy court erred in its finding that on the one hand the Wolf Creek advances were actual and for the preservation and protection of the estate; and on the other hand that such advances did not benefit the estate.

5. The bankruptcy court erred in a clearly erroneous sense in its finding of fact that Wolf Creek would be obliged to purchase the estate assets whether maintained or left idle and thus Wolf Creek is not entitled to allowance of its claim.

The first and third issues pertain to conclusions of law reached by the bankruptcy court, while the second, fourth and fifth issues pertain to conclusions of fact. Further, issue number one also includes that argument that the subjective motivation of a claimant, *i.e.*, the claimant's self-interest, should never be factored into an analysis under § 503(b)(1)(A).[1] Issue number three, moreover, "is another facet of the argument stated under Issue I." Brief at 32. This court is of the opinion that the final two issues raised, along with the second issue, are underlying factual elements of the first issue; the bankruptcy court based its ultimate holding in part on these factual findings.

A brief discussion of the general principles underlying § 503(b) is necessary at this point. Section 503(a) and 503(b)(1)(A) read as follows:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

.  .  .  .  .

Administrative expenses under § 503(b) enjoy top priority in distribution of claims pursuant to § 507(a) which reads, in part, as follows:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

.  .  .  .  .

These provisions underlie the general policy of the Bankruptcy Code which is to distribute all assets equitably. *In re White Motor Corporation*, 831 F.2d 106, 110 (6th Cir.1987). Further, "the purposes of these provisions of the Bankruptcy Code is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *In re United Trucking Service, Inc.*, 851 F.2d 159, 161 (6th Cir.1988) (citation omitted).

Any analysis under § 503(b)(1)(A) must be made with the principle in mind that the scope of claims allowable under this section "should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." *United Trucking*, 851 F.2d at 164 (citations omitted). "There is, of course, an overriding concern in the Act with keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." *Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974). *See also In re Amarex*, 853 F.2d 1526, 1530 (10th Cir.1988); *In re Dant and Russell, Inc.*, 853 F.2d 700, 706 (9th Cir.1988); *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir.1986); *Matter of Jartran*, 732 F.2d 584, 586 (7th Cir. 1984).

---

1. Thus, the second issue need not be reached if the court agrees with Wolf Creek's assertion that subjective motivation can never play a role in a court's analysis under § 503(b)(1)(A).

The Sixth Circuit has adopted a widely accepted two-part test for determining whether a claim qualifies as an administrative expense under § 503(b)(1)(A). This test focuses upon whether the claim arose postpetition or prepetition and whether the debt substantially benefitted the estate.

The test for whether a claim qualifies for payment as an administrative expense is set forth in *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976). In *Mammoth Mart* the court stated that a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate. *Id.* at 954.

A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from a prepetition debtor, then consideration was given to that entity rather than to the debtor-in-possession. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984). However, if the inducement came from the debtor-in-possession, then the claims of the creditor are given priority. *Id.* at 586.

*White Motor Corp.*, 831 F.2d at 110 (footnote omitted). *See also United Trucking*, 851 F.2d at 161–62; *In re Unimet Corporation*, 842 F.2d 879, 884 (6th Cir.1988). If this test were strictly applied in this case, it could reasonably be argued that Wolf Creek's claim should be given administrative expense priority. The court below, however, applied the following test:

> Expenditures must meet the following criteria to be allowed as administrative expenses: (1) the expenditures must have been for actual expenses, (2) they must have been necessary; and (3) the entity incurring the expenses must have undertaken them in order to benefit the estate as a whole, not to further its own self-interest. *In re Hayes*, 20 B.R. 469 (Bankr.W.D.Wis.1982); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104 (Bankr.S.D.N.Y.1982); *In re McK, Ltd.*,

14 B.R. 518 (Bankr.Col.1981). The last of the three requirements, it has been said, is to "insure that unsecured creditors are not forced to bear the burden of the expenses incurred by the creditor acting in his own interest." *In re Hayes*, 20 B.R. at 473.

103 B.R. at 864. The bankruptcy court found the first two elements satisfied, but not the third. It is Wolf Creek's position on appeal that it was error as a matter of law for the court to engage in the self-interest analysis under the third prong of this test. Wolf Creek, first, contends that the cases cited by the court, *Hayes, O.P.M. Leasing* and *McK Ltd.*, are inapposite. In its reply brief, however, Wolf Creek takes a different approach and argues that these courts were simply wrong in their analyses and that the subjective motivation of the claimant should never be taken into account when dealing with postpetition, as opposed to prepetition, expenses.

■ This court believes that the bankruptcy court engaged in a proper analysis under the facts at hand. Moreover, the court's reasoning was not in derogation of the test commonly applied to § 503(b)(1)(A) as enunciated by the Sixth Circuit; in *White Motor Corp.* and *United Trucking*, the issue of the claimant's self-motivation was not presented. Thus, this court declines Wolf Creek's invitation to ignore a growing and majority trend which recognizes self-interest as an aspect to be considered under § 503(b)(1)(A) when the facts at hand present a situation which contemplates such an analysis. For cases which have recognized this principle in some form or another, *see In re Jartran, Inc.*, 886 F.2d 859, 871 (7th Cir.1989), *In re Lister*, 846 F.2d 55, 57 (10th Cir.1988); *In re Woodstock Associates I, Inc.*, 120 B.R. 436, 451 (Bkrtcy.N.D.Ill.1990); *In re Philadelphia Mortgage Trust*, 117 B.R. 820, 828 (Bkrtcy.E.D.Pa.1990); *In re Moore*, 109 B.R. 777, 784 (Bkrtcy.E.D.Tenn.1989); *In re Butcher*, 108 B.R. 634, 637 (Bkrtcy.E.D.Tenn.1989); *Matter of D'Lites of America, Inc.*, 108 B.R. 352, 357 (Bkrtcy.N.D.Ga.1989); *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bkrtcy.S.D.N.Y.1989); *In re Gillette*

*Associates, Ltd.*, 101 B.R. 866, 881 (Bkrtcy. N.D.Ohio 1989); *Grantham v. Eastern Marine, Inc.*, 93 B.R. 752, 754 (Bkrtcy.N.D. Fla.1988); *In re C.E.N., Inc.*, 86 B.R. 303, 306 (Bkrtcy.D.Maine 1988); *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689 (Bkrtcy.S.D.Cal.1988); *In re SMB Holdings, Inc.*, 77 B.R. 29, 32 (Bkrtcy.W.D.Pa. 1987); *In re Central Foundry Company*, 62 B.R. 52, 54 (Bkrtcy.N.D.Ala.1985); *Matter of Patch Graphics*, 58 B.R. 743, 746 (Bkrtcy.W.D.Wis.1986); *In re O.P.M. Leasing Services, Inc.*, 56 B.R. 678, 683 (Bkrtcy. S.D.N.Y.1986); *In re Charter Company*, 52 B.R. 267, 270 (Bkrtcy.M.D.Fla.1985); *In re United Department Stores*, 49 B.R. 462, 466 (Bkrtcy.S.D.N.Y.1985); *In re Coast Carloading Company*, 34 B.R. 855, 860 (Bkrtcy.C.D.Cal.1983); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bkrtcy. S.D.N.Y.1982); *In re Hayes*, 20 B.R. 469, 472 (Bkrtcy.W.D.Wis.1982); *In re McK, Ltd.*, 14 B.R. 518, 520 (Bkrtcy.Colo.1981).

Many of the cases cited above deal with an analysis of 11 U.S.C. § 503(b)(3)(D) rather than with § 503(b)(1)(A). Section 503(b)(3)(D) allows as an administrative expense the actual and necessary expenses incurred by a creditor, indenture trustee, equity security holder, or creditors committee in making a "substantial contribution" in a bankruptcy case. Courts which have analyzed § 503(b)(3) with the self-interest of the claimant in mind have reasoned that, if the claimant acted primarily in his own self-interest, he did not make a "substantial contribution" to the estate. *See, e.g., Gillette Associates, D.W.G.K. Restaurants,* and *Patch Graphics.* Inasmuch as the test established by the Sixth Circuit under § 503(b)(1)(A) includes the requirement of a "substantial" benefit to the estate, this court sees no reason not to apply the reasoning of the cases which have analyzed the issue under § 503(b)(3). This is, in effect, precisely what the aforementioned cases dealing specifically with § 503(b)(1)(A) have done.

■ With the recognition of the standard used by the bankruptcy court in mind, Wolf Creek's issues on appeal will be examined. The first issue, whether the bankruptcy court erred as a matter of law in denying administrative expense priority to Wolf Creek's claim, is based upon several factual findings which will be scrutinized at a later point in this decision. Initially, however, it is noted that in this portion of its brief, Wolf Creek takes the position that the three cases relied upon by the bankruptcy court, *O.P.M. Leasing Services, Hayes,* and *McK, Ltd.*, are factually inapposite. Then, in its reply brief, Wolf Creek seemingly abandons this position and argues, simply, that the analyses contained in these cases are legally erroneous. According to Wolf Creek, an inquiry into a claimant's self-interest is only proper where the claim is for *pre*petition expenses; however, where *post*petition expenses are involved, only a strictly objective test may be used. As this court has expressed agreement with the reasoning of the courts which have applied the self-interest test to postpetition expenses, however, this argument need not be further addressed.[2]

The principal issue on appeal asks whether the bankruptcy court's factual findings in support of its primary holding are clearly erroneous. The main factual finding upon which the court based its denial of § 503(b) status is that Wolf Creek acted primarily in its own self-interest in making

---

**2.** In support of this argument, Wolf Creek asserts that, if an unrelated entity had loaned funds to GEX and GEX had used the funds in the same way it did here, the party loaning the funds would have been entitled to administrative expense status under § 364(a) which provides as follows:

(a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1304, 1203, or 1204 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

This argument ignores the meaning of "in the ordinary course of business." Expenses incurred in pursuit of carrying on a business in pursuit of reorganization are recoverable under § 503(b); however, where the debtor incurs the expenses in preparation of the sale of its principal assets, the expenses do not fall within the meaning of § 364(a) because the process of selling the principal assets of a business is not one within the ordinary course of business. *See, e.g., In re C.E.N., Inc., supra.*

the advances rather than for the estate's benefit. Thus, the issue before this court is whether the record below contained sufficient evidence that Wolf Creek acted primarily in its own self-interest or whether a review of the record leaves this court "with a definite and firm conviction that a mistake has been committed." *United States Gypsum Co., supra.*

■ The bankruptcy court based its ultimate finding primarily upon the following circumstantial evidence: Wolf Creek did not begin advancing money until January 1, 1988, after the filing of a plan of reorganization which provided for Wolf Creek's purchase of the assets; it would be in Wolf Creek's best interests to maintain the assets since the letter of intent obligated it to purchase the assets; and the letter of intent absolved PNB of any warranties on the assets. 103 B.R. at 865.[3] On the whole, this evidence tends to support the finding that Wolf Creek undertook the payments with its own self-interest in mind, rather than that of the estate and the creditors. The payments made stemmed from the purchase agreement between PNB and Wolf Creek as manifested in the plan of reorganization, rather than from a concern over ensuring the estate's preservation for the benefit of the creditors. In this regard, the term "substantial benefit" to the estate contemplates either the estate's reorganization process, the interests of the debtor's creditors, or both. This principle reflects the basic purpose behind § 503 which is to facilitate the rehabilitation of the debtor by encouraging third parties to provide necessities to the debtor, *United Trucking, supra,* which benefits the creditors overall. Clearly, it was not error for the bankruptcy court to conclude that Wolf Creek, which was preparing to purchase all of GEX's assets, was not out to protect the estate's reorganization efforts and/or the creditors. Here, it must be remembered that an appellant's burden as to factual issues on appeal is quite high: a court of appeals may not reverse the lower court even where it would have weighed the evidence different-

ly if it had been the factfinder. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511.

■ Certain other contentions made by Wolf Creek need to be addressed and clarified. First, Wolf Creek asserts that it was error for the bankruptcy court to find that the advances were actual and necessary for the estate's preservation, while at the same time finding that the same were not beneficial to the estate. This argument reveals a misunderstanding of the bankruptcy court's decision on the part of Wolf Creek. The bankruptcy court did not find that no benefit inured to the estate by the advances. The court, rather, found that the benefit to the estate was only incidental to Wolf Creek's actions, which were made primarily in its own self-interest.

Wolf Creek also submits that the bankruptcy court's conclusion that a proposed purchaser of a debtor's assets may not recover advances made to protect those assets as an administrative expense is legally erroneous. In support of this contention, Wolf Creek asserts that it had no interest in the estate assets when the advances were made. Inasmuch as it has been determined that the lower court was not clearly erroneous in finding that Wolf Creek acted in its own self-interest, this factual assertion does not now merit attention. Moreover, the broad legal assertion of error is an overstatement of the bankruptcy court's holding. Certainly, in many instances where a prospective purchaser of a debtor's assets makes advances to protect those assets, a court may find that the purchaser acted in his own self-interest. The court below, however, did not deem this an absolute legal rule; rather, the court applied the facts at hand and determined that those facts supported such a finding.

■ Wolf Creek, finally, maintains that it was clear error for the bankruptcy court to conclude that it was obligated to purchase the assets regardless of their condition before the advances were made. In this regard, Wolf Creek argues that confirmation of the plan was a condition prece-

---

**3.** The September 27, 1988 hearing did not pro-    vide direct evidence on the issue.

dent to its obligation to purchase the assets, as opposed to the denial of the plan being a condition subsequent which would have voided Wolf Creek's already existing obligation. This court believes that such a distinction bears little upon the court's finding that Wolf Creek acted out of self-interest in making the advances. The simple fact is that Wolf Creek contemplated the purchase of the assets all along and thus maintenance of them was paramount, regardless of when Wolf Creek actually became legally obligated to purchase the assets. In other words, even assuming the bankruptcy court erred in its determination of when Wolf Creek's contractual duties set in, this court still is not left with "the definite and firm conviction that a mistake has been committed." *United States Gypsum Co., supra.* The bankruptcy court's account of the evidence, in other words, "is plausible in light of the record viewed in its entirety." *Anderson, supra.*

### III. CONCLUSION

Based upon the foregoing, the decision of the bankruptcy court below is hereby affirmed in all respects.

IT IS SO ORDERED.