**In the Matter of INDIANA WALNUT PRODUCTS, INC., Debtor.**

**No. 90–40723.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

Sept. 17, 1991.

David A. Rosenthal, Lafayette, Ind., for debtor.

Robert Reiling, Lafayette, Ind., for Bank One.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on a motion for payment of administrative claim filed on behalf of Bank One and the debtor's objection thereto. By its motion, Bank One seeks an administrative claim on account of monies it paid to insure property of the bankruptcy estate after the date of debtor's petition for relief under Chapter 11. The issues raised by the motion and the debtor's objection to it were submitted to the court based upon the parties' stipulation of facts and the briefs of counsel.

The debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on November 19, 1990. Bank One is a secured creditor holding a claim, as of the date of the petition, in excess of $1,950,000.00. This claim is secured by liens upon literally all of the debtor's real and personal property. Despite the broad scope of Bank One's liens, it is substantially undersecured.

Prior to the petition, on September 10, 1990, Bank One was informed that debtor's insurance upon its collateral would lapse on the 19th, due to the debtor's failure to pay the required premium. The debtor not only failed to pay the premium required but made no attempt to obtain substitute insurance. As a result, on September 28 Bank One obtained insurance against property damage as to all of the debtor's real and personal property, in an amount not to exceed $1,959,000.00, at a cost of $9,256.25 per quarter.

As of the date of the debtor's petition for relief the debtor had still not obtained insurance upon its property. The insurance that the bank had obtained continued in effect. Following the petition, the bank demanded that the debtor pay the insurance premiums required by the policy. Nonetheless, the debtor failed to do so. Consequently, on or about December 20, 1990, the bank was required to pay a premium in the sum of $3,998.70 on account of insurance for the period November 19, 1990 to December 28, 1990. Ultimately, on January 28, 1991, the debtor obtained insurance upon its real and personal property in an amount not to exceed $1,357,200.00, at a cost of $9,009.80 per annum.

■ By its current motion, Bank One seeks to recover, as an administrative expense, the $3,998.70 it paid to insure the debtor's property from November 19, 1990 to December 28, 1990. The request is founded upon § 503(b)(1)(A) of the United States Bankruptcy Code. This statute provides:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. 11 U.S.C. § 503(b)(1)(A).

The burden of proving entitlement to an administrative expense rests with the applicant, who must do so by a preponderance of the evidence. *In re Englewood Community Hospital Corp.*, 117 B.R. 352, 358 (Bankr.N.D.Ill.1990). Nonetheless, "[t]he bankruptcy courts have broad discretion in determining whether to award administrative expense priority." *Englewood*, 117 B.R. at 358. *See also In re Lister*, 846 F.2d 55, 56 (10th Cir.1988).

■ "A claim is not entitled to priority simply because the right to payment arises after the debtor-in-possession is in place." *In re Philadelphia Mortgage Trust*, 117 B.R. 820, 828 (Bankr.E.D.Pa.1990). *See also In re Mammoth Mart, Inc.*, 536 F.2d 950, 955 (1st Cir.1976). Instead, the Seventh Circuit, in *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984), adopted a two-part test to determine whether or not a claim is entitled to an administrative priority.

A claim will be afforded priority under § 503 if the debt *both* (1) 'arise[s] from a

transaction with the debtor-in-possession' *and* (2) is 'beneficial to the debtor-in-possession in the operation of the business.' *Jartran,* 732 F.2d at 587 (quoting *Mammoth Mart,* 536 F.2d at 954) (emphasis added).

An additional requirement which must also be fulfilled is that the claimant cannot have incurred the cost or expense in question primarily in pursuit of its own self-interest. *Lister,* 846 F.2d at 57; *Wolfe Creek Collieries Co. v. GEX Kentucky, Inc.,* 127 B.R. 374 (D.N.D.Ohio 1991) (aff'g *Matter of GEX Kentucky, Inc.,* 103 B.R. 863 (Bankr.N.D. Ohio 1988)); *Matter of Cuisinarts, Inc.,* 115 B.R. 744, 750 (Bankr. D.Conn.1990); *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 121 (Bankr. S.D.N.Y.1982); *Matter of Hayes,* 20 B.R. 469, 472 (Bankr.W.D.Wis.1982); *In re McK, Ltd.,* 14 B.R. 518, 520 (Bankr.D.Colo.1981). The interaction of these three requirements is designed to ensure that a claim to an administrative priority comports with both the language and the purposes of § 503. *Jartran,* 732 F.2d at 586. If not, the claim must fail.

■ Bank One's application fails two of these three criteria. Its claim does not arise as a result of a transaction with the debtor-in-possession. Furthermore, although the estate did receive a benefit as a result of Bank One having undertaken to procure insurance upon its assets, that benefit was merely incidental; Bank One acted primarily in its own self-interest.

■ A resulting benefit to the bankruptcy estate or debtor-in-possession is not, by itself, sufficient to entitle one to receive administrative priority. Instead, this benefit must either arise from a transaction between the claimant and the debtor-in-possession or the claimant must have given consideration to the debtor-in-possession. *In re White Motor Corp.,* 831 F.2d 106, 110

(6th Cir.1987) (citing *Mammoth Mart,* 536 F.2d at 954). This requirement helps to ensure that administrative priority is only given to those claimants whose performance has been induced by the debtor-in-possession. *Jartran,* 732 F.2d at 587; *White Motor,* 831 F.2d at 110; *Wolfe Creek,* 127 B.R. at 379; *In re SMB Holdings, Inc.,* 77 B.R. 29, 32 (Bankr.W.D.Pa. 1987).

In this instance, Bank One's actions were not induced by the debtor-in-possession. Furthermore, the transaction in question was between the bank and a third party, the insurer, and it was this third party who received the consideration which formed the foundation for the bank's claim. While it might be argued that it was the debtor's failure to insure which motivated or induced the bank to procure insurance, the bank's right to do so was not the result of a transaction with the debtor-in-possession. Although it undoubtedly had the right to procure insurance upon its collateral, that right arose only because it had been granted in the loan documents which were executed when the *pre-petition* debtor granted the lien.[1] It is only because the bank was granted this right *prior* to the petition that it could procure insurance upon the assets in question without being considered an officious intermeddler or a mere volunteer.

Not only were the bank's actions not induced by the debtor-in-possession but the transaction which serves as the foundation for its claim was not with the debtor-in-possession and the debtor-in-possession did not receive the consideration which supports the bank's claim. The transaction in question was entirely between the bank and the insurer and it was the insurer who received payment of the required premium.[2] Although the debtor undoubtedly de-

---

1. This case is distinguishable from cases such as *In re Packard Properties, Ltd,* 118 B.R. 61 (Bankr.N.D.Tex.1990) and *In re Lenz,* 90 B.R. 458 (Bankr.D.Colo.1988) both of which granted priority status to post-petition assessments, which included costs for maintaining insurance, levied by property owners associations on account of property of the estate. The Seventh Circuit has determined that such assessments,

even though levied post-petition, are pre-petition claims. *Matter of Rosteck,* 899 F.2d 694 (7th Cir.1990).

2. It is this fact which distinguishes this case from *In re Gamma Fishing Co., Inc.,* 70 B.R. 949 (Bankr.S.D.Cal.1987). There, the debtor's insurance company was granted an administrative claim on account of unpaid post-petition insur-

rived a benefit as a result of this transaction, through having its property insured, the benefit was merely incidental.

It is the incidental nature of the benefit the debtor received which causes the bank's claim to fail the third test required for an administrative claim. This third test requires that "the creditor must have undertaken the expenses in order to benefit the estate as a whole, not to further his own self-interest." *Hayes,* 20 B.R. at 472; *SMB Holdings,* 77 B.R. at 32. Thus,

> [e]fforts undertaken by a creditor solely to further his own self-interest ... will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate. *Lister,* 846 F.2d at 57. *See also Wolfe Creek,* 127 B.R. 374; *Cuisinarts,* 115 B.R. at 750; *O.P.M. Leasing,* 23 B.R. at 121.

Here the court is persuaded that Bank One acted primarily, if not exclusively, in furtherance of its own self-interest when it undertook to procure and maintain insurance upon the debtor's assets. This is demonstrated by the fact that it first elected to do so in September of 1990 approximately two months before the bankruptcy began. Furthermore, it only obtained insurance against various forms of property damage to its collateral and did not insure other aspects of the debtor's operations. The amount of the insurance is also somewhat revealing. Although prior to the petition the debtor's assets had been insured for an amount not to exceed $2,000,000.00, when Bank One elected to obtain insurance it did so in an amount not to exceed $1,959,-000.00, an amount only slightly in excess of the obligation that the property secured.

█ In many respects, this case is indistinguishable from *McK,* 14 B.R. 518. There, as here, a secured creditor sought an administrative claim for the cost of insurance it had obtained upon the debtor's property following a petition for relief. While that court, as does this court, fully recognized the wisdom and necessity of insurance, it concluded that the creditor's expenses could not be accorded administrative status. The creditor was, however, entitled to include the cost of that insurance as part of its secured claim, since the property in question had a value of approximately $500,000.00 over and above the amounts due the mortgage holder. *McK,* 14 B.R. at 520.[3]

Although the court is unable to accord Bank One an administrative priority for its insurance expenses, this conclusion should not be construed as any criticism of its actions. It acted prudently, even though only to protect its own interests. The debtor-in-possession has an obligation imposed upon it by the act of seeking relief under Chapter 11 "to protect and conserve property in its possession." *In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 817 (Bankr. N.D.N.Y.1989). Insuring property of the estate against loss or destruction is a fundamental aspect of this fiduciary duty. The failure to fulfill this duty can have dramatic consequences including relief from the automatic stay, pursuant to § 362(d)(1), for cause or lack of adequate protection. *See In re Graydon,* 8 B.R. 475, 479 (Bankr.S.D.Fla.1981) ("the continuing of the automatic stay ... will be conditioned upon the defendant's maintaining insurance...."); the appointment of a trustee, pursuant to § 1104(a)(1), for cause. *See In re Caroline Desert Disco, Inc.,* 5 B.R. 536, 537 (Bankr.C.D.Ca.1980); *In re Crescent Beach Inn, Inc.,* 22 B.R. 155, 160 (Bankr.D.Me.1982); and conversion or dismissal, pursuant to § 1112(b). In extreme cases, management for the debtor-in-possession may also be exposing themselves to personal liability to the bankruptcy estate, in the event the estate would be harmed by

---

ance premiums which accrued during the time for acceptance or rejection of an executory insurance contract. The transaction which confronted that court was one which took place directly between the debtor and its insurer, as opposed to the debtor being an incidental beneficiary of a transaction between a creditor and an insurer.

**3.** Unfortunately for Bank One, unlike the creditor in *McK,* it appears to be substantially undersecured. If so, it may not, pursuant to 11 U.S.C. § 506(b), include its cost for insurance as part of its secured claim.

reason of the failure to insure. *See In re San Juan Hotel Corp.*, 847 F.2d 931 (1st Cir.1988). (Trustee may be held personally liable to the bankruptcy estate for losses caused by the failure to fulfill the trustee's fiduciary duties).

It may seem inequitable that one creditor should be forced to bear the burden of preserving, even if only temporarily, an asset of the bankruptcy estate. As a result, the court can fully understand the frustration that Bank One may experience when it receives this decision. The court notes, however, that the bank might have been able to avoid this frustration by seeking court approval of its action prior to having paid the premium in question. Although the debtor filed for relief on November 19, 1990, the invoice for the insurance premium is dated December 20. Consequently, it appears that it would have been possible for the bank to seek an administrative status for this expense, pursuant to § 364(b), which would have given the court the opportunity to approve it, or take some other action, rather than being presented with a *fiat accompli*. Nonetheless,

> if the creditor does not require that [an] administrative expense priority be granted *before* extending credit, there is no reason for the Court to require priority. *SMB Holdings*, 77 B.R. at 33 (quoting *In re Glover*, 43 B.R. 322, 325 n. 9 (Bankr. D.N.M.1984) (emphasis added)).

Bank One's motion for an administrative claim will be denied. An appropriate order will be entered.