In re Jerome D. **BADGLEY** and Tonya R. Badgley, Debtors.

No.  03–31252.

United States Bankruptcy Court, E.D. Michigan, Southern Division—Flint.

April 7, 2004.

Heather M. Bush, Davison, MI, for Debtors.

Collene K. Corcoran, Troy, MI, Trustee.

*OPINION DENYING MOTION OF FORD MOTOR CREDIT COMPANY FOR ALLOWANCE OF ADMINIS-TRATIVE CLAIM FOR PAST DUE LEASE PAYMENTS*

WALTER SHAPERO, Bankruptcy Judge.

Debtors filed this Chapter 13 case on March 25, 2003. Ford Motor Credit Company ("Ford") is the lessor of a 2000 Ford Windstar ("Vehicle"), of which Debtors are the lessees. Debtors filed their original Chapter 13 Plan on April 9, 2003, stating in Paragraph 10 of the proposed Plan that they intended to assume the Vehicle and, as they indicated they were current in lease payments, pay Ford lease payments directly. On June 6, 2003, Ford filed a pre-confirmation motion for relief from the automatic stay and for allowance of its administrative claim for past due lease payments. Debtors thereafter consented to relief from stay on the Vehicle, which was effectuated by an Order dated July 2, 2003. One day prior, on July 1, 2003, Debtors filed their first pre-confirmation amended Chapter 13 Plan, which changed Paragraph 10 of the proposed Plan with regard to the Vehicle lease as follows:

10. *EXECUTORY CONTRACTS AND UNEXPIRED LEASES*

The debtor rejects the following executory contracts and/or expired leases:

Ford Credit for the lease of the 2000 Ford Windstar.

The issue of whether Ford is entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(1)(A) for post-filing unpaid lease payments remains to be decided. Ford filed an objection to confirmation of Debtors' first modified pre-con-

firmation plan, reasserting its position that it is entitled to an administrative claim for past due lease payments, even though Debtors now proposed to reject the Vehicle lease and the stay had been lifted. The Chapter 13 Trustee and Ford have thoroughly briefed the issue. Debtors' Chapter 13 Plan, as last amended, has not yet been confirmed, apparently due to this outstanding administrative claim issue. Because resolution of this issue was not a condition to confirmation under 11 U.S.C. § 1325 and the facts of this case, this case likely should have been previously confirmed and this issue reserved accordingly. Generally speaking, an order resolving this issue in this case and all cases similarly situated should not hold up confirmation unless there exists a specific plan provision that affects it, or plan confirmation itself is affected by disposition of the issue.

 That said, the Court concludes that any post-petition past due lease payments in this case are not entitled to administrative expense priority status. Ford concedes that the Vehicle lease was never assumed by Debtors. The Trustee asserts that resolution of this issue turns on whether Debtors assumed the lease. The Court agrees. Section 1322(b)(7) of the Bankruptcy Code states that a Chapter 13 plan may provide for assumption, rejection or assignment of an unexpired lease of the debtor. While Debtors in this case originally stated their intent to assume the Vehicle lease, that intent never rose to actual effectuation of assumption of the lease. Thereafter, however, Debtors rejected the Vehicle lease by filing their modified plan pre-confirmation. A pre-confirmation plan modification becomes the plan. 11 U.S.C. § 1323(b). A Chapter 13 plan is an appropriate medium through which to assume or reject an unexpired lease. Fed. R. Bankr.P. 6006(a) ("A pro-

ceeding to assume, reject, or assign an executory contract or unexpired lease, *other than as part of a plan,* is governed by Rule 9014.") (emphasis added).

Debtors' rejection of the Vehicle Lease through their modified Plan, had a statutorily stated effect upon Ford's claim. Section 365(g)(1) of the Bankruptcy Code states, in relevant part:

> [T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
> (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition . . . .

Ford argues that, despite Debtors' rejection of the Vehicle lease, post-petition past due lease payments up until the time of rejection in the modified Plan should still be entitled to administrative expense priority status, arguing that because Debtor fell behind in lease payments post-petition and Ford relied upon Debtors' original Plan, which stated their intent to assume the lease, for some four (4) months, Ford should be seen as having advanced actual and necessary costs and expenses of preserving the estate pursuant to Section 503(b)(1)(A) during this time. The weakness of this argument is that Section 365(g)(1) specifically states that Debtors' rejection of the Vehicle lease is a pre-petition breach of the lease, which thus makes it a *pre-petition claim.* A pre-petition claim obviously cannot be a cost or expense of preserving the estate because the bankruptcy estate does not exist pre-petition. Thus, in situations where there are defaults by a Chapter 13 debtor in car lease or other lease/rent payments due after the filing, but before confirmation and rejection, i.e., what some call the

"gap" period, those defaulted payments would be part of a lease rejection claim by reason of the operation of the stated Code provisions. Rejection is a Code made phenomenon and possibility that only comes into existence after the bankruptcy case is filed and essentially lasts until confirmation. The Code in so many words thus affirmatively says that the very post-petition pre-confirmation executory contract defaults involved in this case are to be treated as pre-petition claims. It does not say that they "may" be treated as such—it in effect says that they must be treated as such. There is no logical room in that statutory scheme to conclude that they can also be found to be an administrative expense, i.e.: a post-petition claim with administrative expense priority. When it comes to statutory construction, the general usually gives way to the specific, and, statutes are not to be construed to make for conflicts or inconsistencies. This is particularly so when one realizes that the same statutory scheme, recognizing the situation this may put lessors in, has provided a sort of quid pro quo, or some protections, to a lessor by reason of the potential exposure the lessor has during the gap period. The initial filed plan may itself state that debtor intends to reject, and if so, the lessor can promptly move to lift the stay in order to minimize the period the debtor will be able to use the car without paying lease payments. Or, the car lessor can promptly obtain adequate protection under Section 363(e)-a provision added to the Code to help deal with just such situations. (If the latter course of action is pursued, that section specifically precludes seeking relief from the stay).

A practical, but real problem may arise because a plan, as initially filed may indicate that the lease is intended to be assumed, but is then modified later, and maybe close to confirmation, to indicate the lease is to be rejected. That scenario can have the practical effect of freezing the lessor from seeking either a lift of the stay or Section 363(e) adequate protection payments, because of the perceived likelihood (evidenced by the Plan's initial assumption provision) that the defaults will be promptly cured in accordance with Code requirements-but also putting the lessor in the position, possibly on the eve of confirmation, of not having protected itself. The Code itself contemplates that possibility and judges should not try to judicially legislate around it. If the jurisdiction involved is one which confirms quickly, practical considerations and transaction costs may tend to preclude exercise of some of the options, but if so, such are economic or strategic decisions, the consequences of which (good or bad) are not remediable by court fiat. Where the confirmation period tends to be longer, at some point the rent/lease loss is such as may compel the lessor to act. In this case, the lessor seeks to introduce yet another remedy for a very real "problem," and that is to have the unpaid post-petition/pre-confirmation rent/lease payments determined to be administrative costs and, thus, likely to be paid in full prior to the time that those same payments would be paid if the lease were assumed, rather than being rejected, thus avoiding or reducing the risks of post-confirmation default.

In a situation where the lease covers a car the debtor uses to drive to work daily, for instance, an argument not without a certain logic can be made under classic administrative expense criteria, i.e., an actual and necessary expense of preserving the estate where the giving to and from was necessary to obtain the funds necessary to fund the plan (during the gap period), comparable to the analysis in a Chapter 13 case where the debtor conducts his or her own business, or a Chapter 11 business case, in both of which such

expenses could be considered as administrative with the priority of payment that produces. The Court is cognizant of some Chapter 11 cases which have held that damages arising from a debtor's post-petition, but pre-rejection breach of an unexpired lease or executory contract may be treated as an administrative expense claim under Section 503 if certain conditions are met. *See, e.g., United Trucking Service, Inc. v. Trailer Rental Co. (In re United Trucking Service, Inc.)*, 851 F.2d 159, 162–63 (6th Cir.1988). Ford urges this Court to analogize those Chapter 11 cases to the Chapter 13 context and this case. However, the Chapter 11/Chapter 13 distinction is crucial. In examining the issue, the *United Trucking* Court first looked at the purpose of Section 503(b)(1)(A):

> The purpose of these provisions of the Bankruptcy Code is to facilitate rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services.

*Id.* at 161 (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976)). Notwithstanding the fact one could logically argue that Chapter 13 debtors also seek "rehabilitation" as opposed to liquidation, the Court finds the primary motivations and goals of a Chapter 11 debtor-in-possession and its lessors to be meaningfully different than those of Chapter 13 consumer debtors and their lessors in the context of contemplated expeditious confirmation processes with smaller financial exposures and optimal ways of minimizing them, and situations which do not involve crucial extensions of credit for sometimes extended lengths of time and the uncertainties of whether an operating business will be able to continue or not.

There are, additionally also several problems with Ford's argument. First, in the case of an executory contract, as noted, the law affirmatively says that any and all post-petition pre-rejection defaults are to be considered as breaches of the contract and, importantly, are to be treated as a claim arising pre-petition, and that allowing those defaults to be treated instead as an administrative claim and paid as such, is completely at variance with the former concept. As previously noted: (1) this conceptual clash occurs in the context of a specific statutory scheme designed to deal with executory contracts, as opposed to another provision of general application-a situation which as a matter of statutory construction tends to favor the former; (2) a Section 363(e) mandatory adequate protection order provides the potential for protection, and all that is required is that the lessor affirmatively ask for it (just as the lessor must affirmatively ask for the administrative expense treatment); and (3) the lessor also has the options of seeking to lift the stay and/or shortening the period within which the rejection determination must be made.

There could also be administrative and confirmation issues arising out of what Ford is seeking. The rejection is effective at confirmation, but if an administrative claim is the result, depending on the amount, feasibility of the Plan could be affected, or the time and manner of payment of other creditors (administrative or otherwise) to be paid under the Plan could also be affected-items which might result in deferral of confirmations and aggravation, or, perpetuation of the problem in a manner and to a degree not contemplated by, or consistent with, an orderly and expeditious confirmation process.

In the face of the conceptual clash and the existence of alternative remedies that seem adequate to the protective task and the other mentioned considerations, the Court concludes the sought after administrative expense remedy is not available in

these circumstances, and any other remedies can only be legislative, not judicial.

In light of the foregoing, the Court directs the Trustee to prepare an appropriate order confirming the Debtors' Chapter 13 Plan. An appropriate order will enter.